UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRIAN PRESTON, | : | Case No. 1:15-cv-114 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| GREAT LAKES SPECIALTY FINANCE, INC., *et al.* | : | |
| Defendants. | : | |

# ORDER GRANTING DEFENDANT'S
# MOTION FOR SUMMARY JUDGMENT (Doc. 30)

## I. INTRODUCTION

This civil case is before the Court regarding Defendant Great Lakes Specialty Finance, Inc. (doing business as "Axxess Financial")'s motion for summary judgment (Doc. 30) and the responsive memoranda (Docs. 35, 38).

## II. BACKGROUND

Plaintiff Brian Preston was employed by Defendant as a senior financial analyst in its Forecasting, Planning and Analysis group from May 31, 2012 to December 7, 2012. (Doc. 35, at 4, 20).

Plaintiff was diagnosed by a doctor in 2012 as suffering from Autism Spectrum Disorder, which causes him to have heightened sensory sensitivities to visual and audio stimuli in his surrounding environment. Plaintiff did not inform his employer of his disability in the initial months of his employment. Although Plaintiff maintains that the disorder impacted his ability to perform the tasks required of him throughout his tenure at

Axxess Financial, he initially opted to try to surmount those difficulties himself without assistance or accommodation. (*Id.* at 7–8).

In August 2012, Plaintiff first spoke to his supervisor, Laura Middendorf, about his heightened sensitivity to light and noise. (*Id.* at 8). Plaintiff was informed that he would have to specifically request an accommodation through the HR department to pursue significant changes in his working conditions (*Id.*). Plaintiff opted not to move ahead further at that time.

On September 28, 2012, Plaintiff contacted HR for the first time regarding the negative impact his work environment had on his health and productivity due to his ASD diagnosis. (*Id.* at 9). Plaintiff requested that he be granted appropriate accommodations to allow him to effectively perform his job. A meeting was scheduled for October 3, 2012 to discuss how to move forward. (*Id.*).

In preparation for the meeting regarding potential accommodations, Plaintiff procured a letter from his treating psychiatrist, Dr. Teresa Anderson. (Doc. 26-1, at 10). Dr. Anderson outlined Plaintiff's heightened sensitivity to external stimuli and expressed her opinion that Plaintiff would be able to greatly increase his productivity were he to be allowed to work in a more isolated environment. Notably, the letter stated: "If it is possible, a situation where [Plaintiff] could work from home partially, if not full time, would be ideal. Mr. Preston thrives in environments where he can control the amount of stimulation he receives." (*Id.*). In a follow-up letter delivered to Defendant's HR department later that month, Dr. Anderson informed Defendant that she had diagnosed Plaintiff with ASD. (*Id.* at 11).

At the October 3, 2012 meeting, Plaintiff outlined his symptoms to Ms. Middendorf and HR manager Jennifer Fonseca and stated that the only effective accommodations that would allow him to be sufficiently productive were either a private office or the ability to work from home. (Doc. 35, at 11). Defendants did not immediately grant either of those requested accommodations. For the rest of October, Plaintiff continued his work at Axxess Financial under largely the same conditions as previously, absent one or two minor interim efforts at accommodation that were unsuccessful in alleviating Plaintiff's difficulties at work. (*Id.* at 13–15).

On November 1, 2012, Defendant informed Plaintiff that an accommodation would be provided; specifically, Plaintiff was allowed to work from home and telecommute four days a week. However, Plaintiff was still required to attend work for the full work day every Monday. The reason given for the required day in the office was that Plaintiff was required to attend weekly meetings held every Monday where analysts would present their work and that his presence would also be required on Mondays for other, general face-to-face interactions. (Doc. 30-1, at 21).

Plaintiff began working from home four days a week beginning November 5, 2012. (Doc. 26, at 46). However, Plaintiff's difficulties at work did not cease with the accommodation. Plaintiff was assigned a project on November 5, the Ohio Title project, that was due November 13. Plaintiff had not finished the project as of the date of his termination on December 7, 2012. When repeatedly asked for updates on the status of the project, Plaintiff cited the insufficiency of the accommodation given by Defendant,

3

claiming that there was no need to go into the office for the entire work day on Mondays and that he was prevented from working to his potential in the distracting environment.

Plaintiff was terminated on December 7, 2012. In an internal company personnel form, Defendant gave the following reasons for Plaintiff's termination:

> Brian has missed delivery dates for the following projects and/or assignments: Ohio Title Analysis due on 11/21/12, Sweep Analysis due on 10/15/12, and Lead to Store Analysis on 10/5/12. Discussed with Brian on multiple occasions, verbally and via email on 10/16/12 and 11/26/12, that continually missing project deadlines does not meet job requirements nor does it support the business. Based on this continued failure to improve in this area, his employment is being terminated effective immediately.

(Doc. 35, at 20).

Plaintiff filed a Complaint against Defendant on February 13, 2015, raising claims of failure to accommodate and disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as well as chapters 4112.02(A) and 4112.99 of the Ohio Revised Code. (Doc. 1). Following discovery, Defendant filed the motion for summary judgment currently before the Court on December 1, 2016. (Doc. 30).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

### A. Disability Discrimination

Plaintiff alleges in his Complaint that that Axcess "was unwilling to provide [him] with reasonable accommodations which would allow him to perform the essential elements of his job." (Doc. 1, at 4). To prevail on this claim, Plaintiff must prove that (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) Axcess knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Green v. Bakemark USA, LLC*, 2016 WL 258345, at *8 (S.D. Ohio Jan. 20, 2016) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. App'x 974, 982-83 (6th Cir. 2011)). Therefore, summary judgment in favor of Defendant is appropriate if Defendant can evidence that there is no genuine dispute of material fact that one of these factors was not met.

For the purposes of this summary judgment motion, Defendant does not dispute that Plaintiff was disabled within the meaning of the ADA, that Defendant knew about Plaintiff's disability, or that Plaintiff requested an accommodation. Defendant contends,

5

however, that Plaintiff was unqualified for his position regardless of accommodation, and that the accommodation provided by Axxess Financial was sufficient under the law. For the reasons outlined below, the Court finds that there is no evidence of any genuine dispute of material fact that Plaintiff was unqualified for his position regardless of accommodation, and that the accommodation provided by Axxess Financial was sufficient under the law, and, accordingly the Court grants the motion for summary judgment on the failure to accommodate claim.

1. **Plaintiff was unqualified for his position**

In order for Plaintiff's claim of failure to accommodate under the ADA to succeed, Plaintiff must demonstrate that he was qualified for the position of Senior Financial Analyst at Axxess Financial, assuming he was given an adequate accommodation for his disability. To be "qualified" under the ADA, a plaintiff must be able "to perform the essential functions" of the position "with or without reasonable accommodation." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc) (quoting 42 U.S.C. section 12111(8)); *Johnson*, 443 Fed App'x at 983. An essential function is a fundamental job duty. *Bakemark*, 2016 WL 258345, at *10 (citing 29 C.F.R. § 1630.2(n)(1)). The regulations accompanying the ADA provide seven non-exclusive factors for determining whether a particular function is essential:

(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;

  (vi) The experience of past incumbents in the job; and/or
  (vii) The current work experience of incumbents in similar jobs.

*Bakemark*, 2016 WL 258345, at *10 (citing 29 C.F.R. § 1630.2(n)(3)); *see also Ford Motor Co.*, 782 F.3d at 762 (applying the regulatory factors to determine if a particular work function was essential).

  Defendant asserts that the following are all essential job functions of a Senior Financial Analyst at Axxess Financial: "completing high-level analyses in a timely manner using available Company data and making reasonable assumptions and inferences, the ability to model new policies/procedures into a forecast, strong attention to detail, the ability to multi-task, good communication and polished presentation skills, and the ability to concisely present findings to appropriate levels of management[.]" (Doc. 30-1, at 26). These proposed essential functions are supported by the official written job description for the position. (Doc. 26-1, at 1-2). Plaintiff does not dispute that these are essential functions.

  The evidence in this case demonstrates the absence of any genuine dispute of material fact that Plaintiff failed to perform the essential functions of his position during his tenure at Axxess Financial. In the roughly six months Plaintiff worked for Defendant, he completed six "main projects," which are larger-scale assignments that do not include routine daily or monthly updating of certain data. Plaintiff failed to complete a single main project by its initial deadline, a fact which is not in dispute. (Doc. 26, at 67).[1] Plaintiff's finished work product was also noted on multiple occasions to have

---

[1] Plaintiff does not dispute this fact but argues that there were various reasons frequently beyond his control for the delays. (Doc. 26, at 67).

substantive errors that needed correcting. (*See* Doc. 32, at 74–88, Doc. 27, at 40–47). Plaintiff notes this himself in his response to the motion for summary judgment, acknowledging that superiors had expressed dissatisfaction (other than for reasons of timeliness) with two of the projects he had worked on, and that one of his major projects had to be revised by Ms. Middendorf following its completion. (*See* Doc. 35, at 25–26).

Crucially for the purpose of this motion, Plaintiff's documented inability to perform the essential functions of his position was present both before and after he requested and received a suitable accommodation for his disability. Plaintiff was assigned a main project, the Ohio Title Project, on November 5, 2012, the same day that Defendant's accommodation allowing Plaintiff to work from home four days per week began. (Doc. 32, at 35). The Ohio Title Project was initially given a deadline of November 11, 2012. (*Id.* at 36). Plaintiff's immediate supervisor, Laura Middendorf, extended that deadline to November 13. (Doc. 30-1, at 21). In the first few days after receiving his assignment, Plaintiff repeatedly resisted Ms. Middendorf's explicit instructions on how to complete the project, becoming defiant when Ms. Middendorf reiterated that the parameters of the project would remain as they were originally assigned. (*See* Doc. 32, at 43–44). Plaintiff missed his initial deadline for turning in the Ohio Title project, as well as a revised November 26 deadline. Plaintiff was able to turn the Ohio Title project in on December 6, 2012. (*See* Doc. 32, at 38–39). On December 7, Plaintiff emailed Ms. Middendorf to inform her that he had made an error in completing the project and that he would an additional day to correct and return the project. (*Id.* at 39). Defendant was terminated on December 7; Plaintiff had taken 18

8

business days beyond the initial 7 business days given for the Ohio Title project and had still failed to fully complete the project, despite having been granted a suitable accommodation for his disability.

Plaintiff argues that the majority of his projects were assigned before Defendant's accommodation for Plaintiff's disability was put into place, and so his disability accounts for those delays. (Doc. 35, at 23–24). Plaintiff also argues that delays in completing projects were not unheard of, citing an affidavit from another employee of Axxess Financial suggesting that the completion of certain projects could at times be delayed by factors outside of an individual analyst's control. (Doc. 29, at 10). However, Plaintiff's timeliness issues persisted after the accommodation was put in place, and they were far more severe than the occasional "few days" extensions that the fellow employee stated occurred occasionally. (*Id*). The evidence in this case shows that Plaintiff, both before and after his accommodation was in place, regularly took over twice as long as the initial given timespan to complete projects, and that his superiors had concerns about the substance of the final product on multiple occasions. Given the circumstances, the evidence reflects that there is no genuine dispute of material fact that Plaintiff was unable to perform the essential functions of a Senior Financial Analyst at Axxess Financial.

Accordingly, Defendant's motion for summary judgment on Plaintiff's claim of a failure to accommodate under the ADA is meritorious, and will be granted.

### 2. The accommodation offered by Defendant was sufficient

Even were Plaintiff to demonstrate that he was qualified for his former position given a suitable accommodation, summary judgment for the employer in a failure to

accommodate claim "is appropriate if the evidence shows that the employer offered an accommodation that was 'plainly reasonable'." *Noll v. IBM Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (recognizing that there is no need to engage in further burden shifting where the existing accommodation is plainly reasonable); *see also Bakemark*, 2016 WL 258345, at *11 (granting summary judgment on failure to accommodate claim where plaintiff failed to show that his employer's proffered accommodation was inadequate).

In this case, it is apparent that Axxess Financial's offered accommodation of allowing Plaintiff to work from home four days per week was a reasonable one. First and foremost, the evidence demonstrates that this accommodation was directly in line with what was requested by Plaintiff's treating psychologist, Dr. Anderson, in a note she provided to Axxess Financial: "If it is possible, a situation where [Plaintiff] could work from home partially, if not full time, would be ideal." (Doc. 26-1, at 10). Defendant allowed Plaintiff to work from his home, where Plaintiff could more fully control his exposure to external stimuli, with the only exception being the one day per week when Defendant required Plaintiff's presence in person. The evidence presented by Defendant adequately explains why this one day per week of in office work was necessary. Plaintiff was required to attend a weekly meeting on Mondays where all senior financial analysts would present their work and discuss ongoing projects. (Doc. 27, at 29–30). Additionally, Defendant wanted Plaintiff to be available in the office that day for any other miscellaneous face to face interactions that his supervisor or coworkers would require. This is an inherently reasonable requirement, as Defendant has demonstrated through submitted evidence that the position of senior financial analyst often required

such face-to-face interactions. (*See* Doc. 26-1, at 1-2 (written job description requiring Senior Financial Analysts to "present findings & recommendations to business leaders," "coach less experienced staff members to assist in their development," and "work directly with the FP&A Financial Analyst on tasks and priority setting")).

Plaintiff argues that the requirement that he be in the office one day per week was inherently unreasonable because, other than the scheduled mandatory meeting every Monday morning, Plaintiff often did not have a specific reason to be on the premises for the rest of the day, and that it therefore "made no sense" for him to be required to spend time in an environment where he was limited by his disability. (Doc. 35, at 35). The Court finds this argument to be without merit. It was in Axxess Financial's interest to have a consistent, predetermined schedule wherein Plaintiff would be available for whatever unscheduled face-to-face interaction his supervisors, clients, or fellow employees may require. The Sixth Circuit has agreed with "the general proposition that an employer is not required to allow disabled workers to work at home, where their productivity would inevitably be greatly reduced" other than in "the unusual case where an employee can effectively perform all work-related duties at home." *Core v. Champaign Cnty. Bd. of Comm'rs*, 2012 WL 4959444 (S.D. Ohio Oct. 17, 2012) (quoting *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997)). Here, where Defendant has demonstrated that there are key functions of the Senior Financial Analyst position that require personal interaction at the office, an accommodation allowing an employee to work from home all but one day of the week is inherently reasonable.

Plaintiff's response to the motion for summary judgment argues that the accommodations requested by Plaintiff—specifically, either a private office or the ability to work from home 5 days a week—were reasonable. (Doc. 35, at 29–37). This argument, however, is irrelevant. The ADA entitles Plaintiff to a reasonable accommodation for his disability, but not the specific reasonable accommodation of his choice. Plaintiff can only defeat Defendant's motion for summary judgment by demonstrating that a reasonable issue of material fact exists that would allow a juror to conclude that Defendant's offered accommodation of working from home 4 days per week was *not* reasonable, and Plaintiff has failed to do so.

Accordingly, the Court grants Defendant's motion for summary judgment on the claim of failure to accommodate under the ADA.

### B. Disability Discrimination

In addition to his claim of failing to accommodate his disability under the ADA, Plaintiff's complaint raises a claim of disability discrimination. Plaintiff can prevail on his claim of disability discrimination by presenting either direct evidence of discrimination or circumstantial evidence. "Distinguishing between cases that involve direct evidence of discrimination and those in which the plaintiff is not able to introduce direct evidence is vital because the framework for analyzing the two kinds of cases differs." *Ferrari v. Ford Motor Co.*, 826 F.3d 885 (6th Cir. 2016) (quoting *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173 (6th Cir. 1996)).

Plaintiff alleges that there is sufficient direct evidence of discrimination to survive a motion for summary judgment. However, none of the evidence Plaintiff cites in

support of this claim actually supports the argument that there is *direct* evidence of discrimination. Direct evidence of discrimination is evidence that "proves the existence of a fact without requiring any inferences." *Pearo v. Hansen & Adkins Auto Transp., Inc.*, 2015 WL 1469163, at *9 (S.D. Ohio Mar. 30, 2015). Courts evaluate whether allegedly discriminatory remarks constitute direct evidence by considering four factors:

> (1) whether the statements were made by a decision maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Diebel v. L & H Resources, LLC,* 492 F. App'x 523, 527 (6th Cir.2012) (quoting *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 478 (6th Cir.2002)). Direct evidence of discrimination in a disability case "will be similar to an employer stating that 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

None of the communications or actions of Defendant as alleged by Plaintiff would support a finding that direct evidence of discrimination was present in this case. Plaintiff argues that he was treated differently by his employer following his disclosure of his ASD diagnosis and request for accommodation. Plaintiff's response to the motion for summary judgment alleges that the "tone" of Defendant's communications became more "vindictive" following the accommodation request and that his supervisors failed to engage in active dialogue to solve any problems that arose. (Doc. 35, at 44–46). Plaintiff also suggests that Defendant ignored justifiable reasons why certain of his projects were not completed on time when citing his lack of timeliness as a reason for his termination. (*Id.* at 26–27). This information is all relevant to Plaintiff's case, but it is not direct

evidence of discrimination; at no point does Plaintiff even suggest that a decision-maker at Axxess Financial expressed in a direct fashion that Plaintiff was being fired *because* he was disabled.

Because there is no direct evidence of discrimination, Plaintiff's disability discrimination claim must be evaluated as a claim alleging circumstantial evidence of discrimination. Courts analyze disability discrimination claims under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thereunder, the plaintiff must first establish a prima facie case of discrimination by showing that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knew or had reason to know of his disability; and (5) the position remained open while the employer sought other applicants or a non-disabled person replaced him. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016) (clarifying the standard for a prima facie case of disability discrimination); *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012); *Lucas v. Gregg Appliances, Inc.*, 2015 WL 1725747, at *8 (S.D. Ohio Apr. 15, 2015).

As previously outlined in Part IV.A.1, *supra*, Defendant has evidenced that there is no genuine issue of material fact that Plaintiff was not qualified for the position of Senior Financial Analyst, even when sufficiently accommodated as required by the ADA. Because this necessary factor is not met, Plaintiff cannot prevail on a claim of disability discrimination relying upon circumstantial evidence.

Furthermore, Plaintiff's cannot present a prima facie claim of disability discrimination because Plaintiff cannot show either that his position remained open while Defendant sought other applicants or that Defendant replaced him with a non-disabled person.  Defendant did not post an opening for Plaintiff's position or otherwise replace Plaintiff.  Plaintiff's work duties were instead distributed among the Senior Financial Analysts that were already working at Axxess Financial when Plaintiff was terminated. (Doc. 30-3, at 4).  "To establish a prima facie case based upon being replaced by someone outside of either of [his] protected classes, Plaintiff must set forth specific facts that would support a finding that another employee was hired or reassigned to perform [his] duties." *Tiller v. Immke Auto Gp., Inc.*, WL 1245881, at *8 (S.D. Ohio Apr. 27, 2007); *see also Schneider v. The Procter & Gamble Co.*, 2012 WL 174648 (S.D. Ohio Jan. 20, 2012); *Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.").

Accordingly, as Plaintiff cannot make a prima facie case of disability discrimination, the Court grants Defendant's motion for summary judgment on Plaintiff's disability discrimination claim.

## V.  CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment (Doc. 30) is **GRANTED.**  The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** in this Court.

**IT IS SO ORDERED**.

Date: 4/18/17

*Timothy S. Black*
Timothy S. Black
United States District Judge